Evan J. Smith
BRODSKY & SMITH
240 Mineola Boulevard
First Floor
Mineola, NY 11501
Telephone:     516.741.4977
Facsimile:      516.741.0626
esmith@brodskysmith.com

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BENJAMIN PLOPPER,<br><br>                    Plaintiff,<br><br>vs.<br><br>ELEVATE CREDIT, INC., JAY BRAY, STEPHEN B. GALASSO, JASON HARVISON, TYLER W.K. HEAD, MICHAEL PUGH, MANUEL SANCHEZ RODRIGUEZ, SAUNDRA D. SCHROCK, and BRADLEY R. STROCK,<br><br>                    Defendants. | Case No.:<br><br>**Complaint For:**<br><br>(1) Violation of § 14 (a) of the Securities Exchange Act of 1934<br>(2) Violation of § 20(a) of the Securities Exchange Act of 1934<br><br>**JURY TRIAL DEMANDED** |

Plaintiff, Benjamin Plopper ("Plaintiff"), by and through his attorneys, alleges upon information and belief, except for those allegations that pertain to him, which are alleged upon personal knowledge, as follows:

**SUMMARY OF THE ACTION**

1. Plaintiff brings this stockholder action against Elevate Credit, Inc. ("Elevate" or the "Company") and the Company's Board of Directors (the "Board" or the "Individual Defendants," and collectively with the Company, the "Defendants"), for violations of Sections 14(a) and 20(a) of the Securities and Exchange Act of 1934 (the "Exchange Act") as a result of Defendants' efforts to sell the Company to PCAM Acquisition Corp. ("Parent"), an affiliate of Park Cities Asset

- 1 -

Management LLC ("Ultimate Parent"), through merger vehicle PCAM Merger Sub Corp. ("Merger Sub" and collectively with Parent and Ultimate Parent, "PCAM") as a result of an unfair process, and to enjoin an upcoming stockholder vote on a proposed all cash transaction (the "Proposed Transaction").

2. The terms of the Proposed Transaction were memorialized in a November 16, 2022, filing with the Securities and Exchange Commission ("SEC") on Form 8-K attaching the definitive Agreement and Plan of Merger (the "Merger Agreement"). Under the terms of the Merger Agreement, each existing share of Elevate's common stock will be converted into the right to receive $1.87 in cash, without interest.

3. Thereafter, on December 20, 2022, Elevate filed a Preliminary Proxy Statement on Form PREM14A attaching the proxy statement (the "Preliminary Proxy Statement") with the SEC in support of the Proposed Transaction.

4. In addition, it appears as though the Board has entered into the Proposed Transaction to procure for itself and senior management of the Company significant and immediate benefits with no thought to Plaintiff, as well as the Company's public stockholders. For instance, pursuant to the terms of the Merger Agreement, upon the consummation of the Proposed Transaction, Company Board Members and executive officers will be able to exchange all Company equity awards for the merger consideration.

5. In violation of the Exchange Act, Defendants caused to be filed the materially deficient Preliminary Proxy Statement in an effort to convince Plaintiff to vote in favor of the Proposed Transaction. The Preliminary Proxy Statement is materially deficient, deprives Plaintiff of the information necessary to make an intelligent, informed and rational decision of whether to vote in favor of the Proposed Transaction, and is thus in violation of the Exchange Act. As detailed below, the Preliminary Proxy Statement omits and/or misrepresents material information concerning, among other things: (a) the sales process and in particular certain conflicts of interest for management; (b) the financial projections for Elevate, provided by Elevate management to the

Board and the Board's financial advisor Morgan Stanley & Co. LLC ("Morgan Stanley") and (c) the data and inputs underlying the financial valuation analyses, if any, that purport to support the fairness opinions created by Morgan Stanley, if any, and provide to the Company and the Board.

6. Absent judicial intervention, the Proposed Transaction will be consummated, resulting in irreparable injury to Plaintiff. This action seeks to enjoin the Proposed Transaction.

## PARTIES

7. Plaintiff is a citizen of Texas and, at all times relevant hereto, has been a Elevate stockholder.

8. Defendant Elevate provides online credit solutions to non-prime consumers in the United States. Elevate is incorporated in Delaware and has its principal place of business at 4150 International Plaza, Suite 300 Fort Worth, Texas 76109. Shares of Elevate common stock are traded on the New York Stock Exchange under the symbol "ELVT".

9. Defendant Jay Bray ("Bray") has been a Director of the Company at all relevant times.

10. Defendant Carlton Galasso ("Galasso") has been a director of the Company at all relevant times.

11. Defendant Jason Harvison ("Harvison") has been a director of the Company at all relevant times.

12. Defendant Tyler W.K. Head ("Head") has been a director of the Company at all relevant times.

13. Defendant Michael Pugh ("Pugh") has been a director of the Company at all relevant times.

14. Defendant Manuel Sanchez Rodriguez ("Rodriguez") has been a director of the Company at all relevant times.

15. Defendant Saundra D. Schrock ("Schrock") has been a director of the Company at all relevant times.

16. Defendant Bradley R. Strock ("Strock") has been a director of the Company at all relevant times.

17. Defendants identified in ¶¶ 9 - 16 are collectively referred to as the "Individual Defendants."

18. Non-Party Parent is an affiliate of Park Cities Asset Management created to effectuate the Proposed Transaction. Park Cities Asset Management is an alternative investment firm focusing on providing debt solutions to companies across industries. It provides debt capital through asset-based financing transactions, and seek to deploy $10m-$50m per transaction.

19. Non-Party Merger Sub is a wholly owned subsidiary of PCAM created to effectuate the Proposed Transaction.

## JURISDICTION AND VENUE

20. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act. This action is not a collusive one to confer jurisdiction on a court of the United States, which it would not otherwise have. The Court has supplemental jurisdiction over any claims arising under state law pursuant to 28 U.S.C. § 1367.

21. Personal jurisdiction exists over each defendant either because the defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

22. Venue is proper in this District pursuant to 28 U.S.C. § 1391, because each of the Individual Defendants, as Company officers or directors, has extensive contacts within this District; for example, the Company's stock trades on the New York Stock Exchange which is headquartered in this District.

## SUBSTANTIVE ALLEGATIONS

*Company Background*

23. Elevate Credit, Inc. provides online credit solutions to non-prime consumers in the United States. The company offers unsecured online installment loans, lines of credit, and credit cards. Its products include Rise, an installment loan product; Elastic, a line of credit product; and Today Card, a credit card product. Elevate Credit, Inc. was incorporated in 2014 and is headquartered in Fort Worth, Texas.

24. The Company's most recent financial performance press release, revealing financial results from the quarter preceding the announcement of the Proposed Transaction, indicated impressive financial success. For example, in the November 9, 2021 press release announcing its 2022 Q3 financial results, the Company highlighted an 11% Revenue increase and a 3% increase in receivables.

25. Speaking on the positive results, CEO Jay Harvison said, "Elevate continues to execute against a challenging macro background. For the third quarter, our financial results are keeping with expectations. We remain cautious on growth throughout the remainder of the year as we introduce new and improved affordability and income verification tools,"

26. The sustained financial success and impressive results are not an anomaly, but rather, are indicative of a trend of continued future potential success by Elevate. Clearly, based upon the positive outlook, the Company is likely to have tremendous future success.

27. Despite this upward trajectory, the Individual Defendants have caused Elevate to enter into the Proposed Transaction without providing requisite information to Elevate stockholders such as Plaintiff.

*The Flawed Sales Process*

28. As detailed in the Preliminary Proxy Statement, the process deployed by the Individual Defendants was flawed and inadequate, was conducted out of the self-interest of the Individual Defendants and was designed with only one concern in mind – to effectuate a sale of the Company by any means possible.

29. Notably, while the Preliminary Proxy Statement discloses that a "Convenience Committee" was formed to evaluate the Proposed Transaction, it fails to disclose the powers the committee had in doing so, including whether the committee was empowered to veto a potential transaction not in the best interest of shareholders.

30. Additionally, the Preliminary Proxy Statement is silent as to the nature of the confidentiality agreement entered into between the Company and PCAM, whether this agreement differed from any other agreement with potentially interested third parties not specifically mentioned by the Preliminary Proxy Statement, if so in all specific manners, including all specific terms of any such included "don't-ask, don't-waive" provisions or standstill provisions contained therein, including, all specific conditions, if any, under which such provisions would fall away.

31. It is not surprising, given this background to the overall sales process, that it was conducted in an inappropriate and misleading manner.

*The Proposed Transaction*

32. On November 16, 2022, Elevate and PCAM issued a joint press release announcing the Proposed Transaction. The press release stated, in relevant part:

> **FORT WORTH, Texas--(BUSINESS WIRE)--** Elevate Credit, Inc. ("Elevate" or the "Company"), a leading tech-enabled provider of innovative and responsible online credit solutions for non-prime consumers, today announced it has entered into a definitive agreement to be acquired by an affiliate of Park Cities Asset

Management LLC ("Park Cities"), an alternative asset manager focused on providing flexible debt solutions.

Park Cities will acquire Elevate for $1.87 per share in an all-cash transaction at an implied value of $67 million. Pursuant to the terms of the merger agreement, 7% of shares and shares underlying equity awards held by certain members of Elevate management are permitted to rollover into equity of the acquiring entity.

Founded in 2014, Elevate has reinvented non-prime credit with online solutions that provide financial relief today, and help people build a brighter financial future. The Company, along with the banks that license its technology, has originated more than $10 billion in credit to nearly 3 million non-prime consumers.

Park Cities brings decades of experience in consumer and commercial lending, extensive corporate finance acumen and significant operating experience that will allow Elevate to continue to serve credit-constrained Americans. Park Cities has a long relationship with Elevate and currently provides corporate debt as well as financing for the Today Card product. Park Cities is also based in Texas and intends to maintain Elevate's headquarters in Fort Worth, Texas.

"From the beginning, Elevate has strived to be the most trusted and preferred alternative credit provider for the 'New Middle Class'—the more than 100 million credit constrained Americans," said Jason Harvison, Chief Executive Officer of Elevate. "I am excited to build on our partnership with Park Cities and continue our work as a leader and innovator in the non-prime market. I look forward to working with the Park Cities leadership team and believe the Company will greatly benefit from their expertise and comprehensive understanding of the credit landscape."

"Elevate fills a massive void in the lending market, both through its suite of credit solutions and its powerful AI-driven technology platform," said Alex Dunev of Park Cities. "I am confident that we can help advance the Company's vision while it maintains its commitment to serving the non-prime consumer."

**Transaction Details**

The transaction, which was approved by the Elevate Board of Directors by the unanimous vote of those voting, is expected to close in the 1st Quarter of 2023, subject to customary closing conditions, including approval by Elevate shareholders and receipt of regulatory approvals.

Upon completion of the transaction, Elevate's shares will no longer trade on the New York Stock Exchange and Elevate will become a private company. The Company will continue to operate under the Elevate name and brand.

*Potential Conflicts of Interest*

33.     The breakdown of the benefits of the deal indicate that Elevate insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders such as Plaintiff. The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff as a public stockholder of Elevate.

34.     Company insiders, currently own large, illiquid portions of Company stock all of which will be exchanged for the merger consideration upon the consummation of the Proposed Transaction, not shared amongst Plaintiff and other public stockholders of the Company. Notably, while the Preliminary Proxy Statement provides the following information, it fails to account for the cash consideration which such shares will be exchanged for:

| Beneficial Owner | Total Shares Beneficially Owned | Percentage of Outstanding Common Stock |
|---|---|---|
| Jason Harvison | 906,116 | 2.9% |
| Chad Bradford | 124,090 | * |
| Christopher Lutes | 890,627 | 2.8% |
| Stephen B. Galasso | 201,219 | * |
| Sarah Cutrona | 301,083 | * |
| Tyler Head | 144,121 | * |
| Jesse K. Bray | 33,334 | * |
| Saundra D. Schrock | 201,219 | * |
| Michael Pugh | 29,070 | * |
| Bradley R. Strock | 151,856 | * |
| Manuel Sanchez Rodriguez | 29,070 | * |
| Steve Trussell | 0 | * |
| David Peterson | 111,704 | * |
| Scott Greever | 107,934 | * |
| All directors and executive officers as a group (14 persons): | 3,231,443 | 10.2% |
| **5% or Greater Stockholders:** | | |
| JB Capital Partners, L.P. | 1,822,242 | 5.8% |

35.     Additionally, Company insiders, currently own large amounts of company options, restricted stock units, and other equity awards, all of which will be exchanged for the merger consideration upon the consummation of the Proposed Transaction, not shared amongst Plaintiff

and other public stockholders of the Company. The Preliminary Proxy Statement fails to account for these awards.

36. Significantly, despite negotiating an all cash transaction for common shareholders, members of the board, including Defendant Harvison, will be entitled to roll over a portion of their shares in exchange for new shares in the Pro Forma Company, a benefit not available to common shareholders such as Plaintiff.

37. In addition, certain employment agreements with certain Elevate executives, entitle such executives to severance packages should their employment be terminated under certain circumstances. These 'golden parachute' packages are significant and will potentially grant each director or officer entitled to them millions of dollars, compensation not shared by Plaintiff.

| Executive | Cash ($) | Equity ($) | Total ($) |
|---|---|---|---|
| Jason Harvison | 2,383,001 | 2,437,330 | 4,820,331 |
| Christopher Lutes | 824,966 | 586,172 | 1,411,138 |
| Sarah Cutrona | 318,909 | 145,153 | 464,062 |
| Chad Bradford | 567,470 | 246,694 | 814,164 |

38. The Preliminary Proxy Statement also fails to adequately disclose communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for Plaintiff to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

39. Thus, while the Proposed Transaction is not in the best interests of Elevate, Plaintiff or Company stockholders, it will produce lucrative benefits for the Company's officers and directors.

*The Materially Misleading and/or Incomplete Preliminary Proxy Statement*

40. On December 20, 2022, the Elevate Board caused to be filed with the SEC a materially misleading and incomplete Preliminary Proxy Statement that, in violation the Exchange

Act, failed to provide Plaintiff in his capacity as a Company stockholder with material information and/or provides materially misleading information critical to the total mix of information available to Plaintiff concerning the financial and procedural fairness of the Proposed Transaction.

*Omissions and/or Material Misrepresentations Concerning the Sales Process leading up to the Proposed Transaction*

41. Specifically, the Preliminary Proxy Statement fails to disclose material information concerning the process conducted by the Company and the events leading up to the Proposed Transaction. In particular, the Preliminary Proxy Statement fails to disclose:

   a. Adequate disclosure as to the powers of the Convenience Committee, specifically whether the committee was empowered to veto a transaction not in the best interest of shareholders;

   b. Adequate disclosure as to why members of the Board are entitled to rollover their shares but common shareholders are not;

   c. Whether the confidentiality agreements entered into by the Company with PCAM differed from any other unnamed confidentiality agreement entered into between the Company and an interested third parties;

   d. All specific conditions under which any standstill provision contained in any entered confidentiality agreement entered into between the Company and potentially interested third parties throughout the sales process, including the Consortium, would fall away; and

   e. Adequate and complete disclosure of communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders.

*Omissions and/or Material Misrepresentations Concerning Elevate's Financial Projections*

42. The Preliminary Proxy Statement fails to provide material information concerning financial projections for Elevate provided by Elevate management to the Board and Morgan

Stanley and relied upon by Morgan Stanley in its analyses. The Preliminary Proxy Statement discloses management-prepared financial projections for the Company which are materially misleading.

43. Notably the Preliminary Proxy Statement reveals that as part of its analyses, Morgan Stanley reviewed, "certain internal financial statements and other financial and operating data" prepared by Company management.

44. The Preliminary Proxy Statement should have, but fails to provide, certain information in the projections that Elevate management provided to the Board and Morgan Stanley. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007)

45. With regard to the *August Financial Forecasts* prepared by Elevate, the Preliminary Proxy Statement fails to disclose material line items, including the following:

> a. The specific inputs, metrics, and assumptions used to calculate the following metrics: Gross Revenue, Net Income, Diluted EPS, Book Value, and Book value Per Outstanding Share.

46. With regard to the *October Financial Forecasts* prepared by Elevate, the Preliminary Proxy Statement fails to disclose material line items, including the following:

> a. The specific inputs, metrics, and assumptions used to calculate the following metrics: Gross Revenue, Net Income, Diluted EPS, Book Value, and Book value Per Outstanding Share.

47. The Preliminary Proxy Statement also fails to disclose a reconciliation of all non-GAAP to GAAP metrics utilized in the projections.

48. The Preliminary Proxy fails to disclose the underlying bases on which the alternative cases of projections rely.

49. This information is necessary to provide Plaintiff, in his capacity as a Company stockholder, a complete and accurate picture of the sales process and its fairness. Without this information, Plaintiff is not fully informed as to Defendants' actions, including those that may have been taken in bad faith, and cannot fairly assess the process.

50. Without accurate projection data presented in the Preliminary Proxy Statement, Plaintiff is unable to properly evaluate the Company's true worth, the accuracy of the Morgan Stanley's financial analyses, or make an informed decision whether to vote in favor of the Proposed Transaction. As such, the Board has violated the Exchange Act by failing to include such information in the Preliminary Proxy Statement.

*Omissions and/or Material Misrepresentations Concerning the Financial Analyses by Morgan Stanley*

51. In the Preliminary Proxy Statement, Morgan Stanley describes its fairness opinion and the various valuation analyses performed to render such opinion. However, the descriptions fail to include necessary underlying data, support for conclusions, or the existence of, or basis for, underlying assumptions. Without this information, one cannot replicate the analyses, confirm the valuations or evaluate the fairness opinions.

52. With respect to the *Public Trading Comparable Companies Analysis*, the Preliminary Proxy Statement fails to disclose:

   a. The individual metrics for each company compared;

   b. The inputs, metrics, and assumptions used to determine a Stock Price/EPS Ratio reference range of 2.7x-5.1x for the Street Case in year 2023E;

   c. The inputs, metrics, and assumptions used to determine a Stock Price/EPS Ratio reference range of 2.7x-5.1x for the Management Case in year 2023E; and

   d. The inputs, metrics, and assumptions used to determine a Stock Price/TBV Ratio reference range of 1.0x-1.3x.

53. With respect to the *Precedent Transactions Multiples Analysis*, the Preliminary Proxy Statement fails to disclose:

      a. The value of each transaction compared;

      b. The date on which each transaction closed;

      c. The inputs, metrics, and assumptions used to determine a Transaction Price/LTM EPS Ratio of 3.0x – 4.0x; and

      d. The inputs, metrics, and assumptions used to determine a representative range of the Transaction Price/TBV Ratio of 0.35x – 0.45x.

54. With respect to the *Dividend Discount Analysis*, the Preliminary Proxy Statement fails to disclose:

      a. The implied present value of aggregate dividends as of September 30, 2022;

      b. The amount of necessary funding required to maintain a debt to equity ratio of 3.0x;

      c. The range of implied terminal values as of the end of calendar year 2026 derived;

      d. The inputs, metrics, and assumptions used to determine an estimated range of stock price to tangible book value of 0.16x to 0.39x; and

      e. The inputs, metrics, and assumptions used to determine a cost of equity range of 18.1% to 20.1%.

55. With respect to the *Dividend Discount Analysis (For Reference Only)*, the Preliminary Proxy Statement fails to disclose:

      a. The implied present value of aggregate dividends as of September 30, 2022;

      b. The amount of necessary funding required to maintain a debt to equity ratio of 3.0x;

      c. The range of implied terminal values as of the end of calendar year 2026 derived;

      d. The inputs, metrics, and assumptions used to determine an estimated range of stock price to tangible book value of 1.00x; and

      e. The inputs, metrics, and assumptions used to determine an anticipated return on

equity of 20% in 2026.

56. These disclosures are critical for Plaintiff to be able to make an informed decision on whether to vote in favor of the Proposed Transaction.

57. Without the omitted information identified above, Plaintiff is missing critical information necessary to evaluate whether the proposed consideration truly maximizes his value and serves his interest as a stockholder. Moreover, without the key financial information and related disclosures, Plaintiff cannot gauge the reliability of the fairness opinion and the Board's determination that the Proposed Transaction is in his best interests as a public Elevate stockholder. As such, the Board has violated the Exchange Act by failing to include such information in the Preliminary Proxy Statement.

## FIRST COUNT

### Violations of Section 14(a) of the Exchange Act

### (Against All Defendants)

58. Plaintiff repeats all previous allegations as if set forth in full herein.

59. Defendants have disseminated the Registration Statement with the intention of soliciting stockholders, including Plaintiff, to vote in favor of the Proposed Transaction.

60. Section 14(a) of the Exchange Act requires full and fair disclosure in connection with the Proposed Transaction. Specifically, Section 14(a) provides that:

It shall be unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78*l* of this title.

61. As such, SEC Rule 14a-9, 17 C.F.R. 240.14a-9, states the following:

No solicitation subject to this regulation shall be made by means of any proxy statement, form of proxy, notice of meeting or other communication, written or oral, containing any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading.

62. The Registration Statement was prepared in violation of Section 14(a) because it is materially misleading in numerous respects and omits material facts, including those set forth above. Moreover, in the exercise of reasonable care, Defendants knew or should have known that the Registration Statement is materially misleading and omits material facts that are necessary to render them non-misleading.

63. The Individual Defendants had actual knowledge or should have known of the misrepresentations and omissions of material facts set forth herein.

64. The Individual Defendants were at least negligent in filing a Registration Statement that was materially misleading and/or omitted material facts necessary to make the Registration Statement not misleading.

65. The misrepresentations and omissions in the Registration Statement are material to Plaintiff, and Plaintiff will be deprived of his entitlement to decide whether to vote his shares in favor of the Proposed Transaction on the basis of complete information if such misrepresentations and omissions are not corrected prior to the stockholder vote regarding the Proposed Transaction.

## SECOND COUNT

## Violations of Section 20(a) of the Exchange Act

## (Against all Individual Defendants)

66.     Plaintiff repeats all previous allegations as if set forth in full herein.

67.     The Individual Defendants were privy to non-public information concerning the Company and its business and operations via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board meetings and committees thereof and via reports and other information provided to them in connection therewith.  Because of their possession of such information, the Individual Defendants knew or should have known that the Registration Statement was materially misleading to Plaintiff in his capacity as a Company stockholder.

68.     The Individual Defendants were involved in drafting, producing, reviewing and/or disseminating the materially false and misleading statements complained of herein.  The Individual Defendants were aware or should have been aware that materially false and misleading statements were being issued by the Company in the Registration Statement and nevertheless approved, ratified and/or failed to correct those statements, in violation of federal securities laws.  The Individual Defendants were able to, and did, control the contents of the Registration Statement.  The Individual Defendants were provided with copies of, reviewed and approved, and/or signed the Registration Statement before its issuance and had the ability or opportunity to prevent its issuance or to cause it to be corrected.

69.     The Individual Defendants also were able to, and did, directly or indirectly, control the conduct of Elevate's business, the information contained in its filings with the SEC, and its public statements.  Because of their positions and access to material non-public information

available to them but not the public, the Individual Defendants knew or should have known that the misrepresentations specified herein had not been properly disclosed to and were being concealed from Plaintiff and Company, and that the Registration Statement was misleading. As a result, the Individual Defendants are responsible for the accuracy of the Registration Statement and are therefore responsible and liable for the misrepresentations contained herein.

70. The Individual Defendants acted as controlling persons of Elevate within the meaning of Section 20(a) of the Exchange Act. By reason of their position with the Company, the Individual Defendants had the power and authority to cause Elevate to engage in the wrongful conduct complained of herein. The Individual Defendants controlled Elevate and all of its employees. As alleged above, Elevate is a primary violator of Section 14 of the Exchange Act and SEC Rule 14a-9. By reason of their conduct, the Individual Defendants are liable pursuant to section 20(a) of the Exchange Act.

WHEREFORE, Plaintiff demands injunctive relief, in his favor and against the Defendants, as follows:

A. Enjoining the Proposed Transaction;

B. In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C. Directing the Individual Defendants to exercise their fiduciary duties to disseminate a Registration Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.   Granting such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury on all issues which can be heard by a jury.

Dated: December 29, 2022                **BRODSKY & SMITH**

By:   */s/ Evan J. Smith*
Evan J. Smith
240 Mineola Boulevard
Mineola, NY  11501
Phone:  (516) 741-4977
Facsimile (561) 741-0626

*Counsel for Plaintiff*